## HENRY H. GRANT, administrator,

### *vs.*

### NATHAN P. CARVER.

### Waldo.    Opinion December 28, 1883.

*Shipping.   Master.   Ship's husband.   Deceased part-owner.*

The authority of the master of a vessel or of a ship's husband is not vacated by the death of one of the part-owners as to the share of such part-owner, and the master may rightfully continue to account with and pay over to the ship's husband the net earnings of the deceased part-owner's share with the rest of the earnings that come to his hands, and such payment will relieve him from liability to the estate of the deceased until he has notice from the representatives of the deceased that they have revoked the authority of the ship's husband to receive their part of the earnings.

ON REPORT.

Assumpsit by the surviving administrator on the estate of William McGilvery to recover the earnings of one-sixteenth of the ship *Susan Gilmore,* after the death of McGilvery, while the defendant was master, as follows:

> "August 18, 1876,          $826.32.
> "February 1, 1877,          182.12.
> "July 1, 1877,          830.18.
> "February 5, 1881, Interest, 445.48.
>                                    ————
>                                               $2284.10."

The writ was dated February 5, 1881. The plea was general issue.

The opinion states the material facts.

*Joseph Williamson and William H. Fogler,* for the plaintiff.

It was the duty of the master to collect the freight money and as a matter of fact he did collect it. Having collected, it was his duty to remit it to the respective owners, or to some person duly authorized. If he remits to any person other than the owner, such remittance does not relieve him from liability unless previous authority or subsequent ratification is shown. The master's authority to remit to Gilmore, Kingsbury and Company, was given him by McGilvery specially.

Gilmore, Kingsbury and Company, as agents of the ship, were not authorized to receive from the master the net earnings which belonged to the several owners. The master did not so understand, for he gives the express instructions of McGilvery as his authority for remitting to them; and on one occasion, at least, he transmitted direct to a part owner.

The authority given to the defendant by McGilvery to remit his share of the earnings to Gilmore, Kingsbury and Company, was a naked authority, and was, therefore, determined by McGilvery's death.

So far as the remittance of $830.18 is concerned, the authority to remit to Gilmore, Kingsbury and Company, had been specifically revoked by the plaintiff's letter of the third of May, 1877.

A power ceases with the life of the person giving, except in cases where the power is coupled with an interest, or is given for a valuable consideration or as security. The interest which can protect a power after the death of the person who creates it, must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing. *Hunt* v. *Rousmanier,* 8 Wheat. 174.

If an agreement be entered into on a sufficient consideration, whereby an authority is given for the purpose of securing some

benefit to the donee of the authority, such an authority is irrevocable. Chitty on Contracts, 226 ; Story on Agency, § 477.

Gilmore, Kingsbury and Company had no interest in the earnings of this sixteenth of the ship. When the freight was earned and collected by the master, who was the proper agent of each of the owners, it became a thing distinct from the ship, to his share of which each owner had the immediate right of possession. The authority of the master to remit to Gilmore, Kingsbury and Company, the authority of that firm to collect, was a naked power, revocable at pleasure, and ceasing with McGilvery's death.

The contract is inadmissible against the plaintiff. Neither he nor his intestate was a party to it. If admissible, it does not create an interest in plaintiff's share of the earnings of the ship in Gilmore, Kingsbury and Company.

The defendant claims that the plaintiff has ratified the payments to Gilmore, Kingsbury and Company, first, by his acquiescence, secondly, by his letter of June 14, 1878. The ratification of the act of an agent, in order to bind the principal, must be with a full knowledge of all material facts. *Owings* v. *Hull,* 9 Pet. 629 ; *Thorndike* v. *Godfrey,* 3 Greenl. 432 ; *Smith* v. *Kidd,* 68 N. Y. 130 ; *Combs* v. *Scott,* 12 Allen, 496.

If the principal has received no benefit from the agent's act, his ratification must be his deliberate and intentional act. Story's Agency, § 239.

If mere acquiescence is relied upon as an implied ratification, it must appear that the party setting up such ratification has been prejudiced thereby. *Forsyth* v. *Day,* 41 Maine, 394-5.

In the case at bar, there could have been no ratification by the plaintiff until he received the defendant's letter of June 6, 1877, for till then he had no knowledge that the first two remittances had been made to Gilmore, Kingsbury and Company. In August, 1877, at the first opportunity, the plaintiff told the defendant he should look to him for the money. Here was no ratification, no acquiescence, even, but a distinct disclaimer of the defendant's acts. The plaintiff, after that, made no claim upon Gilmore, Kingsbury and Company for the money, and did no act recognizing the defendant's act.

The plaintiff's letter of June 6, 1878, cannot be construed as a ratification. The letter was not written to the defendant; it was written by the plaintiff in his private capacity, the defendant having been previously notified that he would be held responsible for the money, could not have been misled, or suffered injury by reason of the letter.

That letter was written under a mistake of fact — a mistake occasioned by the fraudulent act of Gilmore, Kingsbury and Company. That firm had proved a claim against McGilvery's estate for $5,393.02. After the fraud was exposed in the case of *First National Bank of Salem* v. *Grant*, 71 Maine, 374, the claim was reduced to $2,624.23.

The defendant by wrongfully intrusting the plaintiff's funds to Gilmore, Kingsbury and Company, made them his agents, and cannot avail himself of a ratification secured by their fraud.

*Eugene P. Carver and W. P. Thompson*, for the defendant.

If a party purchase property of another with knowledge of a contract or of a trust relating thereto, he will take only the title and enjoy only those rights that his vendor enjoyed in relation to the same, even if the sale to him was absolute in its terms. *Scudder* v. *Calais Steamboat Co.* 1 Clifford, 370; *Taylor* v. *Stibbert*, 2 Vesey, Jr. 437.

A contract like the one here shown will be enforced between the original parties as regards the management of the vessel, even if a majority in interest of the owners of the vessel desire to break or dispute the same. *Darby* v. *Baines*, 9 Hare, 369; 12 Eng. L. & Eq. 238.

This contract was to those parties who had purchased with knowledge of its contents or had even notice of it, in the nature of an incumbrance on the vessel. *Scudder* v. *Calais Steamboat Co. supra.*

Wherefore those who had knowledge of the contract when they purchased would be bound by its terms. In the questions of actual and constructive notice and of registry, the same principles apply in the conveyance of vessels under the United States registry laws as in the case of real estate. Schouler's

Personal Property, vol. 1, p. 390; *Horton* v. *Davis*, 26 N. Y. 495. See *White's Bank* v. *Smith*, 7 Wall. (U. S.) 646 ; *Aldrich* v. *Ætna Co.* 8 Wall. 491.

Upon the other questions in the case, counsel cited: *Hunt* v. *Rousmanier's Adm'r*, 8 Wheaton, 174; *Merry* v. *Lynch*, 68 Maine, 94; Story on Agency, § § 35, 36, 253, 254, 255, 256; 3 Parsons, Ship. and Adm. 112, 109; *Gilman* v. *Healey*, 55 Maine, 120; *Shaw* v. *Berry*, 35 Maine, 279; *Bell* v. *Cunningham*, 3 Peters, 69; *Conrad* v. *Abbott*, 132 Mass. 330; *Thayer* v. *White*, 12 Met. 343; Elwell Evans, Agency, § § 94, 95; *Wright* v. *Boynton*, 37 N. H. 9; *Law* v. *Cross*, 1 Black, (U. S.) 533; *Brigham* v. *Peters*, 1 Gray, 147; *Foster* v. *Rockwell*, 104 Mass. 167; *Freeman* v. *Swett*, 11 Maine, 79; *Hazard* v. *Spears*, 2 Abb. App. Dec. 353; *Hastings* v. *Bangor House*, 18 Maine, 436; *Low* v. *Conn. R. R. Co.* 46 N. H. 284; *Monitor Ins. Co.* v. *Buffum*, 115 Mass. 343; *Hawley* v. *Northampton*, 8 Mass. 3; *Gifford* v. *Choate*, 100 Mass. 343; *Barrett* v. *Marsh*, 126 Mass. 213.

BARROWS, J. The plaintiff as surviving administrator of William McGilvery brings this action, upon an account annexed and for money had and received, against the defendant who was captain of the ship *Susan Gilmore*, during McGilvery's ownership in the vessel and for nearly sixteen months after his death, claiming to recover one-sixteenth of her earnings while the defendant remained captain, after McGilvery's decease in March, 1876. The defendant paid over all the earnings which came to his hands in this interval to Gilmore, Kingsbury and Company, who were the managing owners in the lifetime of McGilvery, and continued to be so until about the time of their failure in December, 1878, nearly a year and a half after the defendant left the ship. He denies his liability to pay any portion of it to McGilvery's estate in this action notwithstanding he had notice from the administrators, in May, 1877, before he left the ship in July, and before the payment of the last installment to Gilmore, Kingsbury and Company, that they claimed to hold him responsible for one-sixteenth of the ship's net earnings, and requiring

him to pay their sixteenth to certain parties named in their letter other than the ship's husband. To this written notice received by him in England, the defendant responded in a letter showing more temper than good taste, but in substance informing them that he had transmitted the earnings of the ship to Gilmore, Kingsbury and Company, — that this was in conformity with his last orders from McGilvery, — that they were the agents of the ship, " and it was known by all the owners when they took in her "— and that he was not the agent and should not be responsible for the earnings of McGilvery's part, but that Gilmore was good for it and would probably have accounted for it if McGilvery's share had not been in some way mortgaged or incumbered.

While it may well be that, in the absence of any binding agreement to the contrary, a co-part-owner of a vessel may revoke the authority of the ship's husband to receive his share of the net earnings and may require the captain to remit such share of all that may come into the captain's hands to himself or to such person or persons as he may appoint, we think the report in the present case exhibits sufficient reasons against the recovery by the plaintiff here, even of the sum paid over to Gilmore, Kingsbury and Company after the reception of the notice from the administrators in May, 1877. Obviously, as to all sums previously accounted for and paid over by the captain to the managing owners, there can be no valid claim.

The death of a co-part-owner does not, *ipso facto*, revoke the authority by him given to the master of a vessel in which he owns an interest, or to the ship's husband, as to his share. The manifold inconvenience and injustice that would be liable to result from holding the agency to be thus revoked in such cases would be sufficient reason for making them exceptions to the ordinary rule. The personal representatives of the decedent, simply take his place, his position and his rights touching the affairs of the ship. A ship's husband may be appointed either in writing or by parol, or his appointment may be inferred from the acquiescence of the part-owners in the performance by him of the duties

of the trust, and by their recognition of him as such in their mutual dealings; and in the recital of his powers and duties we find among others — "to make contracts for freight and collect the freight and all returns." Parsons on Ship. and Adm. Book I, c. IV, § 6.

In the absence of express orders to the contrary from the representatives of a deceased co-part-owner, it cannot be doubted that the master would be relieved from all personal liability for the earnings by him received when he had paid them over to the managing owner, even though one or more of the part-owners by whom the business was originally intrusted to himself and to such managing owner, might be dead at the time of such payment. The rightfulness of the payments by the defendant to Gilmore, Kingsbury and Company, who had been recognized as the managing owners by McGilvery himself, cannot be questioned up to the time of the reception of the order from the administrators to remit their share of the net earnings elsewhere. Touching the installment subsequently paid, the defendant claims that there was a power irrevocable vested in Gilmore, Kingsbury and Company, as managing owners, by virtue of a' written contract subscribed by Butler and Atkinson, the builders, and the defendant and Gilmore, Kingsbury and Company when they became purchasers of their interests in the ship — to the effect that the defendant should go master of the ship at a certain rate of compensation, and Gilmore, Kingsbury and Company should be the ship's agents, receiving all remittances and paying all bills — to have therefor, a certain commission upon all receipts and disbursements of the ship's money, and interest and commissions at a higher rate for all their advances on the ship's account.

Doubtless, such a contract is valid and binding upon all who become parties to it, and cannot be rescinded by either party so long as it is faithfully observed by the other. *Darby* v. *Baines,* 12 Eng. L. & E. 238. But this agreement was not subscribed by McGilvery, and if it could be fairly inferred from the testimony that he bought his sixteenth of Gilmore, Kingsbury and Company, in subjection to it so that the doctrine of *Scudder* v.

*Calais Steamboat Co.* 1 Clifford, 370, and *Taylor* v. *Stibbert*, 2 Vesey, Jr. 437, could be regarded as applicable, we think enough appears in the case to justify the order which the administrators gave to the captain to remit their sixteenth of the net earnings to themselves or the parties named in their letter of May, 1877.

McGilvery's estate was insolvent and upon his administrators rested the duty of a vigilant collection of its assets for equal distribution among the creditors. The testimony shows that when their notice to the captain was sent, in May 1877, dividends on the share of the vessel owned by the estate to the amount of more than $1000 had been, for months, in the hands of the managing owners and so far as appears, they had neither paid them over to the administrators nor informed them of their reception, though there is nothing to indicate that they had any lien upon them which should prevent their going into the general assets of the deceased insolvent.

Whatever the agreement by which a ship's husband has been appointed, if he fails in the prompt performance of his duties, it can no longer be regarded as binding on the opposite party.

If the agreement that Gilmore, Kingsbury and Company should be the managing owners, were all that the defendant had to rely upon, we think he would be holden for the remittance made to Gilmore, Kingsbury and Company, in defiance of the notice of May, 1877.

But we think the plaintiff is estopped from asserting this claim by the following facts: When the defendant returned to this country in August, 1877, Gilmore, Kingsbury and Co. were for aught that appears, in good credit and condition financially, and the defendant interested himself to bring about an adjustment between them and the administrators of the question that had been raised as to the dividends he had paid over to them. Gilmore, Kingsbury and Company had proved a claim of about five thousand four hundred dollars against the estate of McGilvery in insolvency, and the settlement of the estate had proceeded so far that it was apparent that the dividends thereupon to which they would be entitled, would be likely to

equal or exceed the sum received by them from the earnings of the *Susan Gilmore*. In this condition of things, it seems to have been agreed by Mr. Buck, the plaintiff's co-administrator with Mr. Gilmore and the defendant, that the sums received by the firm from the defendant as earnings of McGilvery's share of the *Susan Gilmore*, should be offset against the dividends due and to become due to the firm from the estate — and thereupon all claim on the part of the estate against the defendant on this score was surceased until more than two years after the failure of Gilmore, Kingsbury and Company, when it was renewed and this suit brought. The administrators have never paid, except by this arrangement, the dividends from the estate to the firm, and neither the firm nor its assignees in insolvency seem to have asserted any claim for them. Thus the defendant's act in paying the earnings to Gilmore, Kingsbury and Company was substantially ratified, and the estate had the benefit of it.

If this adjustment had been the work of Buck alone, it would have bound the estate ; (*Gilman* v *Healy*, 55 Maine, 120 ; *Shaw* v. *Berry*, 35 Maine, 279 ;) but as late as June, 1878, we find the plaintiff also expressing his assent to the arrangement in a letter to the firm, and proposing to turn in the same manner to offset expected dividends, a claim for between six and seven hundred dollars which the estate had against them for the earnings of another vessel. The familiar principles which regulate and enforce equitable estoppels, forbid the plaintiff to retract the assurance given by Buck to the defendant "that it would be all right," inasmuch as they allowed him to suppose the matter thus adjusted until the defendant had lost his opportunity to enforce reimbursement from Gilmore, Kingsbury and Company. All that the ingenious counsel for the plaintiff have to suggest as a reason for regarding the ratification of the defendant's acts as incomplete, is that after Gilmore, Kingsbury and Company had failed, it turned out that the estate was holden on an accommodation note given by McGilvery for the benefit of the firm, and that the claim of the firm against the estate in insolvency was reduced to about one-half of its original amount. Hereupon they argue that the ratification was

not made with a knowledge of all the facts, and hence not binding. The position is not sound; the administrators did know all the facts respecting the action of the captain which was to be ratified — even to the minutest details — and these are the acts and facts which it is necessary the principal should know in order to make a valid ratification. *Thorndike* v. *Godfrey*, 3 Maine, 429. Aside from this, as matter of fact, the existence of the claims by the establishment of which the debt due from the estate to Gilmore, Kingsbury and Company was reduced, must have been known to the administrators prior to the plaintiff's letter of June 14, 1878. On both grounds — ratification and estoppel — the defendant is entitled to prevail.

*Judgment for defendant.*

PETERS, C. J., WALTON, DANFORTH and LIBBEY, JJ., concurred.